UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RICKY LEE KALUZA, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. G-09-242 |
| | § | |
| RICK THALER, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER**

The petitioner, Ricky Lee Kaluza (#1450943), seeks habeas corpus relief under 28 U.S.C. §2254, challenging a 2007 state felony conviction of sexual assault. The respondent has filed a motion for summary judgment. (Doc. # 5). Kaluza has not filed a reply. Based on a careful consideration of the pleadings, the record and the applicable law, this court grants the respondent's motion and by separate order enters final judgment dismissing the case. The reasons for this ruling are set out below.

**I.      Procedural History**

Kaluza was convicted of sexual assault in the 10th District Court of Galveston County, Texas, on July 13, 2007. He was sentenced to 20 years imprisonment and a $5000 fine. He appealed his conviction to the First Court of Appeals of Texas, which affirmed the conviction on July 19, 2008. *Kaluza v. State*, No. 01-07-737-CR. Kaluza did not file a petition for discretionary review. He filed a state application for writ of habeas corpus on June 19, 2009. On October 7, 2009, the Texas Court of Criminal Appeals (TCCA) denied relief without written order based on the findings of the trial court. Kaluza filed the instant federal petition on October 7, 2009.

## II. Case History

At one time, [Kaluza] and S.G. lived together in her trailer, and he fathered her two children. He was asked to move out, and in the early morning hours of August 28, 2006, [Kaluza] broke into S.G.'s trailer and sexually assaulted her." *Kaluza v. State,* slip opinion at 2. S.G. is Shannon Gonzalez. She testified at trial that after Kaluza gained entry to the trailer they "got into a physical altercation" and "[a]t one point he had me pinned down on the bed. . . . He had his hand on my throat and was on top of me." When she tried to call the police, Kaluza grabbed the phone from her and broke it in half. Kaluza then "pinned [her] down on the floor . . . He had me pinned on the floor the same way he had me pinned on my bed with his hand on my throat" when he ripped her shorts off. Kaluza sexually assaulted Gonzalez, then left the trailer at her request.

A nurse who examined Gonzalez shortly after the assault testified that she had bruising on her neck that was consistent with being choked. DNA analysis showed that semen found on a rug in the trailer was Kaluza's. DNA analysis of swabs taken from Kaluza and Gonzalez showed a mixture of DNA from both of them.

## III. Kaluza's Claims

1. He was denied effective assistance of counsel at the guilt-innocence phase because:

    a. counsel failed to seek adequate funding to investigate whether the complainant had given the petitioner permission (in the past) to enter her trailer through a window;

    b. defense counsel failed to show and failed to prepare to show that the complaining witness (Shannon) sought payment from Kaluza's family while holding out the prospect of asking to have charges dropped or reduced;

    c. counsel bolstered the testimony of the complaining witness by bringing out evidence of an extraneous offense by Kaluza;

    d. counsel did not succeed in having the trial court exclude evidence of extraneous offense or request a limiting instruction;

    e. counsel gave the jury the impression that Kaluza was trying to manipulate the complaining witness.

2

    2.    He was denied effective assistance of counsel at the punishment phase because:

        a.    counsel submitted an election to have the jury assess punishment that was signed by someone other than Kaluza;

        b.    counsel failed to conduct an investigation into available mitigating evidence.

The respondent contends that Kaluza is not entitled to relief under the federal habeas corpus standard of review and that the petition must be denied because his claims fail as a matter of law. The parties' contentions are addressed below.

## IV. The Applicable Legal Standards

This court reviews Kaluza's petition for writ of habeas corpus under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996. 28 U.S.C.§ 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson,* 127 F.3d 409, 413 (5th Cir. 1997) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). Subsections 2254(d)(1) and (2) of the AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits." An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

In ruling on a motion for summary judgment, this court views the evidence through "the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986). The court must look "through the prism of AEDPA deference." *Ward v. Dretke*, 420 F.3d 479, 499 (5th Cir. 2005).

The AEDPA provides as follows, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)
>
>> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if (1) the state court's conclusion is "opposite to that reached by the [the Supreme Court] on a question of law" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to

4

extend that principle to a new context where it should apply." *Id*. at 390-91.  In deciding whether a state court's application was unreasonable, this court considers whether the application was "objectively unreasonable." *Id.*; *Penry v. Johnson*, 215 F.3d 504, 509 (5th Cir. 2000).  Fact findings by the state court are "presumed to be correct . . . and [receive] deference . . . unless . . . based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Hill*, 210 F.3d at 485 (quoting U.S.C.§2254(d)(2)).

Pure questions of fact are governed by § 2254(d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  In addition, a state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C.§2254(e)(1) unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)).  This deference extends not only to express findings of fact, but to the implicit findings of the state court as well.  *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules.  Section 2254(e)(1) - which mandates that findings of fact made by a state court are "presumed to be correct" - overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.  Unless the petitioner can "rebut [ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

5

Moreover, once a party has been given a reasonable time to respond to an opposing party's motion for summary judgment but fails to make any attempt to do so, the Court may rule upon the evidence before it and may treat that evidence as undisputed. *Eversley v. MBank Dallas*, 843 F.2d 172, 173-74 (5th Cir. 1988).

**V.     The Claim of Ineffective Assistance of Counsel**

Kaluza asserts that trial counsel was ineffective at the guilt and punishment phases of the trial. Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, the defendant must show that (1) counsel's representation was deficient (i.e. that it fell below an objective standard of reasonableness) and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland*, 466 U.S. at 687-91 and 694. In other words, defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id.* Under § 2254(d)(1), the Court must analyze whether the state court's ultimate decision that petitioner did not make the required *Strickland* showing was contrary to, or an unreasonable application of the *Strickland* standard. *See Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2004) (the test is not whether petitioner makes the *Strickland* showing). However, "a federal habeas court is authorized by § 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). A federal habeas court should assume the state court

applied the correct "clearly established Federal law" in making its decision. *Schaetzle*, 343 F.3d at 443.

To determine whether reasonably effective representation was provided, inquiry must be made into the totality of the circumstances surrounding counsel's performance." *Tijerina v. Estelle*, 692 F.2d 3, 7 (5th Cir. 1982). Effective assistance is not equivalent to errorless counsel or counsel judged ineffective by hindsight. A court reviewing an ineffectiveness claim must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence or that, under the circumstances, the challenged action might be considered sound trial strategy. *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993).

    A.    <u>Ineffective Assistance of Counsel at the Guilt Phase of the Trial</u>

Kaluza alleges that his trial counsel, Jeffrey Gelb, rendered ineffective assistance of counsel for reasons stated above (section III). To establish "deficient performance," Kaluza must show his attorney's errors were "so serious that his counsel was not functioning as the 'counsel' the Sixth Amendment guarantees." *Strickland*, 466 U.S. 668, 687. Kaluza first contends that his defense counsel should have spent additional funds to investigate whether the complainant had, in the past, given the petitioner permission to enter her trailer through a window. This claim was denied on the merits by the state court, so the issue for this Court is whether the state court's decision is contrary to, or the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

On state habeas review, Kaluza's trial and appellate attorneys submitted affidavits in response to Kaluza's contention. In his affidavit, trial counsel stated that an investigator was

paid over $1,000.00 in Kaluza's case and completed the investigation that was requested. Counsel stated that "the funding was sufficient for the investigation needed." Of relevance is the fact that Kaluza was not found guilty of burglary, but the lesser offense of sexual assault. There is no evidence to suggest that further evidence into the means by which Kaluza gained access into the complainant's trailer was necessary or that it would bolster the defense.

In its order recommending that relief be denied, the trial court expressly found that counsel's averments were true. Thus, the facts found by the state trial court that must be presumed correct by the Court are those set out in counsel's affidavits. Since there is no indication that further investigation into Kaluza's past method for gaining access into the complainant's home was necessary, or that such evidence would bolster the defense, the state court's conclusion that defense counsel's failure to do so did not constitute deficient performance was not unreasonable.

Kaluza next contends that defense counsel should have shown that the complaining witness (Gonzalez), sought payment from Kaluza's family of $1,000.00, while holding out the prospect of asking to have charges dropped or reduced; and, failed to call witnesses who would have testified that the complaining witness was not credible. Kaluza asserts that Gonzalez' friend, Heather Sharp and his brother, could have testified about this but were not called as witnesses. Kaluza also asserts that the investigator had a tape-recording made by Heather Sharp but trial counsel declined to review it.

Counsel responded to Kaluza's allegations in his affidavit. Counsel noted that he decided against using the videotape because he believed it was illegally obtained, raised admissibility problems and implicated the defendant in a crime by taping the complainant without permission. Kaluza had several jail visits with the complainant while the case was pending before trial and

counsel felt it was possible that Kaluza had suggested to the complainant that his family would pay money. Moreover, Kaluza owed much more money in back child support than the $1,000 at issue in his allegation. Kaluza also had previous felony convictions including a prior sexual assault; thus, counsel did not want to open the door to questions concerning the defendant's reputation. Counsel further stated that Kaluza's brother was not called as a witness because the brother had no personal knowledge of the complainant's conversation with Sharp, and, he also had a prior felony record.

With respect to the claim that counsel failed to call witnesses Chris Bontje and his father, Kasper, who would have testified that the complaining witness was not credible, counsel states in his affidavit that both of these individuals were out of state and unavailable. Furthermore, counsel argues that the testimony of these witnesses was inconsequential as the complainant's reputation from a previous relationship was not at issue.

Kaluza also complains that counsel failed to present any defense against an allegation by the complainant that Kaluza's family had threatened her, and also failed to seek a limiting instruction. In his affidavit, counsel explained that he did not seek a limiting instruction because he did not want to focus on this evidence. Kaluza's family had felony convictions and counsel was not convinced the allegation was false.

A decision not to investigate is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation, and it must therefore be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003). The state denied relief on claims relevant to the investigation based on the affidavit of trial counsel. The issue is whether, had counsel delved into the accusation of a request for money by the complainant or had

decided to allow the Bontjes, Sharp and Kaluza's brother to testify, there is a reasonable probability that the result of this case would have been different. Counsel was uncomfortable eliciting testimony from these sources because he believed the testimony was either tainted or not true, and/or had no bearing on the crime for which Kaluza was convicted. Because it is unclear whether testimony from these sources and the tape recordings were credible, the Court cannot find that there is a reasonable probability that, had counsel more thoroughly investigated and/or presented this testimony, the result would have been different. Because the state court's rejection of Kaluza's claims was not based upon a decision that was contrary to, or the result of an unreasonable application of clearly established Federal law, or the result of an unreasonable determination of he facts in light of the evidence presented in the state post-conviction proceedings, the Court denies the ineffective assistance of counsel (at the guilt phase) claims.

### B. Ineffective Assistance of Counsel at the Punishment Phase of the Trial

Kaluza alleges that he received ineffective assistance of counsel at the punishment phase of the trial because counsel submitted an election to have the jury assess punishment that had been signed by someone other than Kaluza. The Court Record reflects that Kaluza filed a motion to have the jury assess punishment and he signed it. Although Kaluza claims the signature is not his own, counsel remembers Kaluza signing the motion for election of punishment and Kaluza testified at a pretrial hearing that he wanted the jury to assess punishment. SHCR-01 at 91. Kaluza does not allege that he desired that the court, rather than the jury, assess punishment. Therefore, no prejudice is shown. Moreover, the validity of the signature issue is a factual finding that is entitled to a presumption of correctness on federal habeas review. Kaluza has provided no evidence, much less the clear and convincing evidence required by statute, that would overcome this fact finding.

Kaluza also alleges that counsel failed to investigation the following factors in his past which were potentially mitigating:

1. He grew up in a low-income household;

2. he had "some kind of" learning disability;

3. he was knocked unconscious in the third grade and began having suicidal "ideas" afterward; and,

4. he attempted suicide twice.

Kaluza claims that defense counsel wrongly took the position, as allegedly stated in his affidavit, that counsel did not have the same obligation to investigate mitigating evidence that he would have had in a capital case.

In his affidavit, counsel explained that he was aware of Kaluza's drug and extensive criminal histories, his personal history and jail misconduct. Counsel felt that Kaluza's conviction and jail histories were exacerbating, not mitigating, to his defense. He believed that it was not in Kaluza's best interest to present a defense that was introduced by Kaluza's history of theft, burglary of a habitation with intent to commit sexual assault, evading arrests, terroristic threats, pending failure to register as a sex offender, Aryan Brotherhood gang member and extensive jail misconduct. Counsel's strategy was to avoid Kaluza's negative personal history. This strategic decision reflects neither deficient performance nor prejudice, and follows Fifth Circuit precedence which recognizes that, even in capital cases, counsel may reasonably elect to not offer "double-edged" testimony such as this. *See Martinez v. Quarterman*, 481 F.3d 249, 254-55 (5th Cir. 2007); *see also Martinez v. Dretke*, 404 F.3d 878, 889 (5th Cir. 2005). Moreover, Kaluza misstated counsel's explanation that he did not have the same obligation to develop mitigating evidence as he would in a capital case. In fact, counsel averred only that in a non-capital case, "the strategy is different as to mitigation." SHCR-01 at 91. This statement is

11

correct as the Supreme Court has stressed the importance of mitigating evidence in capital cases. *See, e.g., Schriro v. Landrigan*, 550 U.S. 465, 486 (2007). Moreover, there is no constitutional requirement that mitigating evidence be presented in non-capital cases.

Kaluza must show there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. Kaluza wholly fails to explain how delving into his past felonious history, revealing his family's conviction history, or calling unnecessary witnesses would have changed the outcome of the trial at the guilt or punishment phase. In fact, it is an accepted trial strategy to steer attention away from illegal past conduct performed by an applicant, especially if the complained of conduct bears a resemblance to past convictions. "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). Kaluza has failed to show that defense counsel's actions were not part of a reasonable trial strategy and, therefore, has failed to prove prejudice.

## VI. The Claim that the State Presented False Testimony

Kaluza alleges that the state used false testimony by Cindy Siurko, who misrepresented her credentials as a SANE nurse (a trained specialist in evaluation of sexual assault victims). According to Kaluza, Ms. Siurko, who Kaluza alleges is *not* a registered SANE nurse, expressed her professional opinion concerning Shannon Gonzalez' injuries and the weight of her testimony was bolstered because the jury believed she was a registered SANE nurse. The record reveals that Siurko was a registered SANE nurse and had inadvertently let her certification lapse.

A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *See Giglio v. United States*, 405

U.S. 150, 154 (1972). For perjured testimony to constitute a violation of due process, the defendant must show that (1) the testimony was false, (2) the state knew it was false, and (3) the testimony was material. *See Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993). Kaluza has not established that the prosecution was aware that Ms. Siurko's certification had lapsed.

In the alternative, assuming *arguendo* that the state knew that Ms. Siurko's certification had lapsed, Kaluza would not be entitled to relief unless he could establish that there was a reasonable probability that the result of the trial would have been different if this evidence had been disclosed to the defense. "The mere possibility that an item of undisclosed information might have affected the outcome of the trial does not establish 'materiality' in the constitutional sense." *United States v. Aqurs*, 427 U.S. 97, 109-10 91976). Perjury is material only if "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Kirkpatrick*, 992 F.2d at 497. Thus, materiality must be judged in light of the strength of the prosecution's case and is difficult to establish where the evidence of guilt is compelling. *See Kutzner v.Johnson*, 242 F.3d 605, 609 (5th Cir. 2001).Kaluza offers no viable reason that Siurko's perjury was material other than "the weight of her opinion was 'probably' enhanced by her credentials." (Doc. # 1 at 10). He is also unable to point to any other aspect of her testimony that is questionable, much less false; nor does he complain about any other aspect of Siurko's testimony.

The nurse who examined Shannon Gonzalez shortly after the assault testified that Gonzalez had bruising on her neck that was consistent with being choked. DNA analysis showed that semen found on a rug in the trailer was Kaluza's. DNA analysis from swabs taken from Kaluza and the complainant showed a mixture of DNA from both of them. 5 RR 34-38. Given the hard evidence, this Court is of the opinion that there does not exist a reasonable

likelihood that Siurko's perjury could have affected the judgment of the jury.  *See Kirkpatrick*, 992 F.2d at 497.   The State presented substantial other evidence that established Kaluza's guilt, and the perjury is unlikely to have changed the jury's impression of Siurko's general tendency to veracity. Under either alternative analysis, the state court's denial of Kaluza's claim was neither contrary to, nor the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  This claim is denied.

## VII.     The Claim that Appellate Counsel Rendered Ineffective Assistance

Kaluza complains that he was denied effective assistance of counsel on appeal because his appellate attorney failed to present Kaluza' motion for new trial to the trial court and failed to make a timely amendment to the motion for new trial to include a claim of false testimony.  A claim of ineffective assistance on appeal is governed by the same two-part test set out in *Strickland v. Washington*, 466 U.S. (1984), which requires the defendant to establish both constitutionally deficient performance and actual prejudice.  *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986)(applying *Strickland* to a claim of ineffective assistance of counsel on appeal).  To establish that appellate counsel's performance was deficient in the context of an appeal, the defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal - that is, that counsel unreasonably failed to discover non-frivolous issues and raise them.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  If the defendant succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on appeal."  *Id.*

Kaluza's allegation of ineffective assistance against his appellate counsel was rejected on state habeas corpus review.  In the findings of fact and conclusions of law, the state court found that there was ample evidence from the appellate attorney's affidavit and the trial court's record

14

to rule on the relief sought. The state court found that the affidavit was correct and found that no controverted, previously unresolved facts or issues exist which would entitle Kaluza to relief and that the claims had no legal merit.

The record supports the state court's findings and its ultimate conclusion that Kaluza failed to establish a valid claim of ineffective assistance on appeal. In his affidavit, appellate counsel explained that Kaluza "was the beneficiary of an inadvertent instruction to the jury by the trial court" regarding the range of punishment, *i.e.*, that the maximum possible punishment was twenty years when, in fact, it was a mandatory life sentence. SHCR-01 at 93. If a motion for new trial had been filed and granted, Kaluza would have risked receiving a mandatory life sentence on retrial. Counsel discussed extensively with Kaluza and his family the fact that "there was no certainty or determination by anyone that it was in [Kaluza's] best interest for the motion to be heard by the trial court, or for a new trial to be granted." Appellate counsel further noted that given the many inconsistencies of the complainant's testimony, "reliance on her testimony in a new trial as a benefit to [Kaluza] would probably be a mistake." SHCR-01 at 94.

Kaluza also claims that he received ineffective assistance of appellate counsel because counsel failed to make a timely amendment to the motion for new trial to include the claim of false testimony. As correctly stated by the respondent, the claim of perjured testimony is without merit, as discussed above. Therefore, Kaluza could not have been prejudiced by counsel's failure to include it in the motion for new trial.

Kaluza does not demonstrate that his appellate attorney failed to raise a non-frivolous claim. Therefore, Kaluza does not show that his appellate counsel's performance was deficient. Kaluza has failed to demonstrate a valid claim for ineffective assistance of counsel on appeal under the *Strickland* standard. He does not otherwise establish that the state court's decision to

reject his ineffective-assistance claims was contrary to or involved an unreasonable application of clearly established Supreme Court precedent. Therefore, Kaluza is not entitled to federal habeas corpus relief on this issue.

## VIII. Conclusion

For the above reasons, it is **ORDERED** that respondent's motion for summary judgment (Doc. #5 ) is **GRANTED** and Kaluza's application for a writ of habeas corpus is **DENIED**.

This case is **DISMISSED** with prejudice. Any remaining pending motions are denied as moot.

Under the AEDPA, a petitioner must obtain a certificate of appealability before he can appeal the district court's decision. 28 U.S.C. § 2253(c)(1). This court will grant a COA only if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make a substantial showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As the Supreme Court made clear in its decision in *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003), a COA is "a jurisdictional prerequisite," and "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from the habeas petitioners." When considering a request a COA, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 325.

Because Kaluza has not made the necessary showing, this court will not issue a COA.

SIGNED at Houston, Texas this 14th day of January, 2011.

_____
Kenneth M. Hoyt
United States District Judge